# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:15-CV-00050-MOC-DSC

| | |
|---|---|
| **DARDRIE ROZZELLE,** | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| | ) **MEMORANDUM AND** |
| **UNIVERSITY OF NORTH CAROLINA** | ) **RECOMMENDATION AND ORDER** |
| **AT CHARLOTTE, MARIA** | ) |
| **DELGADILLO, BANITA BROWN,** | ) |
| **ALLISON STEDMAN AND ALISON** | ) |
| **WALSH,** | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on the "Motion to Dismiss Amended Complaint" Doc. 23, and the parties' associated briefs and exhibits, Docs. 24 and 26-28.

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the Motion is ripe for determination.

## I. PROCEDURAL BACKGROUND

Plaintiff filed her initial Complaint on January 29, 2015 alleging twenty tort related claims. On February 23, 2015, Defendants filed their Motion to Dismiss. Doc. 11. On April 21, 2015, the undersigned filed a Memorandum and Recommendation and Order recommending dismissal of the case and ordering all further proceedings stayed pending a ruling by the District Judge. Doc. 16. On May 21, 2015, Judge Max O. Cogburn, Jr. overruled the Memorandum and Recommendation and allowed Plaintiff to file an Amended Complaint within thirty days of his Order. Doc. 20.

In pertinent part, Judge Cogburn's Order states:

> Plaintiff is advised that *the only potentially viable claim that appears to confer jurisdiction on this court is for the alleged Fourth Amendment violation made pursuant to 42 U.S.C. § 1983*. See 42 U.S.C. § 1983, 28 U.S.C. §§ 1331, 1343(3). Though 42 U.S.C. § 1983 does not create substantive rights, it provides a remedy for a violation of rights created by federal law or the Constitution of the United States. City of Okl. City v. Tuttle, 471 U.S. 808, 816 (1985). Plaintiff is further advised that in order to maintain this action in this court, Plaintiff's amended complaint must be properly pleaded in conformance with the Federal Rules of Civil Procedure and the Local Rules, and must clearly and concisely state a legally cognizable claim against a proper defendant, with sufficient facts to support the claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, n. 3 (2007) ("Rule 8(a)(2)…requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").
>
> Additionally, while the court has not yet addressed the merits of Defendants' Eleventh Amendment Immunity contentions, Plaintiff is advised that they raise valid arguments as to the monetary relief sought from the state university and its employees in the original complaint. See Amaram v. Virginia State Univ., 476 F. Supp. 2d 535, 540 (E.D. Va. 2007) aff'd, 261 F. App'x 552 (4th Cir. 2008) (noting that pursuant to the Eleventh Amendment, "federal courts must refrain from exercising jurisdiction over suits commenced by the citizen of a state brought against the state of the citizen's domicile.") (citing Hans v. Louisiana, 134 U.S. 1, 10 (1890)). The Eleventh Amendment sovereign immunity protection "extends also to state agents and state instrumentalities, or stated otherwise, to arms of the State and State officials." Cash v. Granville County Bd. of Educ., 242 F.3d 219, 222 (4th Cir. 2001) (citations and quotations omitted). As applicable to Plaintiff's claims of constitutional violations made by state officials acting under the color of state law, Eleventh Amendment immunity does not preclude Plaintiff from bringing a § 1983 action against a state officer so long as the claim alleged is made against the state official acting in his or her individual, as opposed to official, capacity. See Hafer v. Melo, 502 U.S. 21, 30–31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983."); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.…As such, it is no different from a suit against the State itself."); Beardsley v. Webb, 30 F.3d 524, 531–32 (4th Cir. 1994) (holding that the Eleventh Amendment does not apply to an individual capacity suit against a Virginia deputy sheriff). *Thus, to properly plead a cause of action for a § 1983 violation, Plaintiff must name as defendants, in their individual capacities, the officers accused of violating her constitutional rights.* See Hafer, 502 U.S. at 25 ("Personal-capacity suits…seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, on the merits, to establish personal liability in a § 1983 action, it is enough to show

that the official, acting under color of state law, caused the deprivation of a federal right." (internal quotation and citation omitted).

Doc. 20 at 4-5 (emphasis added). This is the law of the case.

## II.  PLAINTIFF'S AMENDED COMPLAINT AND FACTUAL BACKGROUND

Plaintiff filed her "First Amended Complaint for Damages and Injunctive and Prospective and Declaratory Relief," Doc. 21, on June 18, 2015. Accepting the allegations of the Amended Complaint as true, Plaintiff is a student at the University of North Carolina at Charlotte ("UNCC"). In the fall of 2012, she received a failing grade in Spanish. In January 2013, she contacted Defendant Allison Stedman, Associate Chair for the Department of Languages and Culture Studies, and Professor Maria Delgadillo regarding an appeal of her grade. Plaintiff states that she was "given the run around" by Stedman and Delgadillo and they failed to protect her rights with regard to an appeal of her grade. Doc. 21 at ¶ 9. Plaintiff claims that she was placed on academic probation as a result of Defendants' actions. On January 30, 2013, Plaintiff emailed Stedman and Delgadillo that she would be coming by their office to follow up on filing an appeal of her grade.

When Plaintiff arrived at the office, she informed a staff member that she was there to speak with Stedman and Delgadillo. She was then approached by another staff member who twice asked her "in a very firm and demanding tone, 'Who are you?'" Id. at ¶ 12. These staff members did not identify themselves to Plaintiff. Plaintiff states that the second individual placed a phone call. Several minutes later, two female campus police officers arrived and removed Plaintiff from the building.

Plaintiff maintains that she suffered a panic attack as the officers led her to their vehicle. While sitting in the police vehicle, Plaintiff saw a copy of an email that she

allegedly sent to Stedman and Delgadillo. Plaintiff contends that the arresting officer questioned the authenticity of the email and released her. Plaintiff further alleges that she was unlawfully searched while in the officers' custody.

Plaintiff alleges that Stedman and Delgadillo "willfully and knowingly, falsified a defamatory statement (via email) to several people (including University's Deans Alison Walsh and Banita Brown, Defendants) that the Plaintiff was a 'dangerous student' without a reasonable assumption or articulable fact(s)." Id. at ¶ 22. Plaintiff alleges that Stedman and Delgadillo defamed her with the expectation that she would be arrested, expelled from school and denied her federal student assistance. Plaintiff further claims that she was "stalked and harassed" by campus police and feared that they would "make up a reason to attack her." Id. at ¶¶ 24-25. Plaintiff states that the "situation" with Defendants reached a point where she felt it necessary to contact the U.S. Department of Education to complain about the "hostile situation and defamation" and that she eventually moved off campus. Id. at ¶ 26.

Plaintiff alleges that Defendants' "malicious lie" as well as their positions of authority provided them with "actual power to damage the plaintiff's interest." Id. at ¶¶ 27-28. Plaintiff states that the appeal of her grade was never heard and she had to repeat the class. Faculty and staff have told her that she suffers from a mental illness. Plaintiff also states that her academic advisor has been replaced by one who is not in her major or minor fields of study.

Plaintiff contends that Defendants have intentionally subjected her to "mental suffering of serious threat to [plaintiff's] physical well-being," and that she has been unable to focus on her school work, communicate comfortably with others, or feel safe on campus. Id. at ¶ 34. She claims she has suffered severe mental anguish and been "injured in the mind" as a result of

Defendants' actions. Id. at ¶ 36. Plaintiff claims that defamatory statements about her were published by Stedman and Delgadillo and were without privilege and injurious.

Plaintiff's Amended Complaint contains three causes of action titled Count One, Count Two and Count Three. She also asserts multiple tort claims in unnumbered paragraphs. Count One alleges that Stedman and Delgadillo's actions constituted a "[v]iolation of First and Fourteenth Amendment Rights of Free Speech and deprived Plaintiff's liberty without due process of law, and denied equal protection of the laws" citing 42 U.S.C. §§1983, 1981(a), 1985 and 1986. Id. at p. 9 and ¶40-47.

Count Two alleges that "UNCC Campus Polices, Defendants" violated her "First, Fourth, Eighth, and Fourteenth Amendment Rights of Free Speech, deprived Plaintiff's liberty without due process of law, unreasonable searches and seizures, denied equal protection of the laws, cruel and unusual punishment, and assault and kidnapping" citing 42 U.S.C. §§1983, 1985, 1981(a) and 18 U.S.C. § 242. Id. at p. 11 and ¶48-57.

In Count Three, Plaintiff asserts that Defendants "Alison Walsh, Banita Brown, and University of North Carolina at Charlotte" violated her "Fifth and Fourteenth Amendment Right abridge the privileges or immunities of Plaintiff, deprived Plaintiff liberty and equal protection of the laws" citing 42 U.S.C. §§1983, 1985, and 1981(a). Id. at p. 13.

On July 6, 2015, Defendants filed their Motion to Dismiss Amended Complaint. Doc. 23. Defendants argue that the Court lacks jurisdiction because they are subject to immunity under the Eleventh Amendment. Defendants also argue that Plaintiff's Complaint fails to state plausible claims against them. The Motion to Dismiss has been briefed and is now ripe for review.

### III.     STANDARD OF REVIEW

The existence of federal subject matter jurisdiction is a threshold issue. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir.1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000)(citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Subject matter jurisdiction is so limited that federal "[c]ourts have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (internal citations omitted). "No party can waive the defect, or consent to [subject matter] jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted). "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed." United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). A challenge to the court's subject matter jurisdiction may be raised at any time and is properly considered on a motion under Federal Rule of Civil Procedure 12(b)(1). See Fed.R.Civ.P. 12(b)(1) and 12(h).

It is appropriate to consider Defendants' claim of immunity as a challenge to the Court's subject matter jurisdiction. See Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 769 (4th Cir. 1991)(considering whether Quiet Title Act waived sovereign immunity of the United States under Rule 12(b)(1)); Adkins v. Rectors and Visitors of George Mason Univ., No. 1:15cv879, 2015 WL 5638102 (E.D. Va. Sept. 23, 2015) (assertion by state-funded university of Eleventh Amendment immunity to § 1983 claims properly considered under Rule 12(b)(1)). Ordinarily, the plaintiff bears the burden of proving subject matter jurisdiction when a Rule 12(b)(1) motion is made. Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768. Here, Defendants bear the burden of demonstrating sovereign immunity under the Eleventh Amendment

when seeking dismissal under Rule 12(b)(1). Hutto v. South Carolina Retirement System, 773 F.3d 536, 543 (4th Cir. 2014).

## III. DISCUSSION OF CLAIMS

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const., Amend. XI. Although the Eleventh Amendment expressly provides the states with immunity from suits brought by "citizens of another state, or by citizens or subjects of any foreign state," this bar has been extended to suits brought by a state's own citizens. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267–68 (1997). The immunity afforded to the states has also been extended to "state agents and state instrumentalities." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Lee–Thomas v. Prince George's Cnty. Pub. Schs., 666 F.3d 244, 248 (4th Cir. 2012).

State-funded colleges and universities structured to have close ties with the state are considered "arm[s] of the State" for Eleventh Amendment purposes. Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 263 (4th Cir.2005); Huang v. Bd. of Governors of the Univ. of N.C., 902 F.2d 1134, 1138 (4th Cir.1990). Eleventh Amendment immunity also applies to state employees who have been sued in their official capacities. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 609 n. 10 (citing Edelman v. Jordan, 415 U.S. 651 (1974)); Martin v. Wood, 772 F.3d 192, 195 (4th Cir. 2014). The Court concludes that UNCC and the named Defendants are shielded by the Eleventh Amendment.

In his May 21, 2015 Order, Judge Cogburn found that "*the only potentially viable claim that appears to confer jurisdiction on this court is for the alleged Fourth Amendment violation made pursuant to 42 U.S.C. § 1983….Thus, to properly plead a cause of action for a § 1983 violation, Plaintiff must name as defendants, in their individual capacities, the officers accused of violating her constitutional rights.*" Doc. 20 at 4-5.

Plaintiff's Amended Complaint only adds "et al." to the parties named in the caption. She does not name any officers as individual Defendants. Nor does she name any individual officers in the body of her Amended Complaint. Attached to Plaintiff's Response to this Motion to Dismiss was an email that she sent to Officer Amanda Copley on February 5, 2013. Doc. 26 at 10. In this email, Plaintiff thanks Officer Copley for "properly investigating the fraudulent statement made against me by Professor Delgadillo and Dr. Steadman. I was glad you did not just take their words and arrest me." Id. Plaintiff clearly knew the identity of at least one of the campus police officers but failed to sue her in her individual capacity. Consequently, Plaintiff has failed to properly plead a § 1983 claim.

For the above reasons, the Court lacks subject matter jurisdiction and the undersigned respectfully recommends that the claims against the Defendants be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## IV. ORDER

**IT IS ORDERED** that all further proceedings in this action, including <u>all</u> discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

## V. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that the Defendants' "Motion to Dismiss Amended Complaint," Doc. 23, be **GRANTED**.

## VI. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Max O. Cogburn, Jr.</u>

**SO ORDERED AND RECOMMENDED**.

Signed: October 2, 2015

David S. Cayer
United States Magistrate Judge